IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KENNETH L. ROBERSON,

Plaintiff,

v.                                          Case No. **20-cv-376-wmc**

JAMES GREER, LON BECHER, JAMIE GOHDE,
LUCINDA "CINDY" BUCHANAN, DR. SALAM SYED,
MICHAEL DITTMANN, KERRY NEWBURY, KRISTINE
DEYOUNG, RN JANE DOE #1, RN JANE DOE #2,
MARGARET KIECA, NEAVES WALTERS, DENNISE
VALERIOUS, TRISH ANDERSON, M. NAVARRO,
RN HOTCH, BONNIE ALT, LAURIE NEPIWACK.1,
H. FRANK, THERESA BENYO, RACHEL PAFFORD,
ROY R. DAVENPORT, BRIAN T. KLEEBER, and
JOHN DOE NURSING AGENCIES AND INSURANCE
CARRIERS,

Defendants.

CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983

I.   JURISDICTION AND VENUE

    1.   Because this is an action under the Eighth Amendment

and 42 U.S.C. §1983, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. This court has, and Plaintiff Kenneth L. Roberson ("Roberson" or "Plaintiff" hereafter), requests the court exercise, supplemental jurisdiction over Roberson's state law tort claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in the Western District of Wisconsin pursuant to 28 U.S.C. §1391 (b) because the events, decisions and actions of the Defendants occurred either at the Columbia Correctional Institution (CCI), Portage, WI, or the Department of Corrections (DOC), Bureau of Health Services (BHS) at the Central Offices in Madison, WI.

II.   PARTIES

4. Plaintiff Kenneth L. Roberson is a citizen of Wisconsin, and at all times relevant to this complaint was, and currently is, confined at the Columbia Correctional Institution (CCI), Portage, WI.

5. Upon information and belief, Defendant James Greer ("Greer" hereafter) is a resident of Wisconsin, and at all times relevant to this complaint was the Director of the DOC's Bureau of Health Services (BHS), Madison, WI. As such, he was responsible for the administration and provision of medical and physical care services and DOC medical policy and procedure for a prisoners in the DOC care and custody. Greer recently resigned from the BHS and it is unknown where he is now or his employment.

6.   Defendant Greer is sued in his individual capacity for damages.

7.   Upon information and belief, Defendant Lon Becher ("Becher" hereafter) is a resident of Wisconsin, and at all times relevant to this complaint was a Regional Nursing Supervisor for the BHS. As such, he was responsible for the supervision and training of all nurses in his assigned region. He also acted as defendant Greer's "gatekeeper" for Greer's incoming prisoner correspondence and made replies thereto on Greer's behalf or stead.

8.   Defendant Becher is sued in his individual capacity for damages; and in his official capacity for injunctive relief.

9.   Upon information and belief, Defendant Jamie Gohde ("Gohde" hereafter) is a resident of Wisconsin, and at all times relevant to this complaint was the CCI Health-Services Manager (HSM). As such, she was responsible for the day-to-day medical care of all prisoners at CCI, including provision of medical devices. She was also responsible for the day-to-day supervision and training of all nurses at CCI during her tenure. She was replaced as HSM by defendant Buchanan in or about March 2019. It is unknown to Plaintiff where she is now or her employment.

10.   Defendant Gohde is sued in her individual capacity for damages.

11.   Upon information and belief, Defendant Lucinda "Cindy" Buchanan ("Buchanan" hereafter) is a resident Wisconsin, and

at all times relevant to this complaint was the HSM. As such, she had the same duties and responsibilities as defendant Gahde as stated in ¶ 9, above.

12. Defendant Buchanan is sued in her individual capacity for damages; and she is sued in her official capacity for injunctive relief.

13. Upon information and belief Dr. Salam Syed ("Syed" hereafter) is a resident of Wisconsin, and at all times relevant to this complaint was a medical doctor at CCI, and as such, he was responsible for the direct diagnosis, treatment and follow up for that treatment to make sure it was carried out. Upon information and belief defendant Dr. Syed was fired in 2019 for misconduct, incompetence and/or dereliction of duties. His whereabouts and employment are unknown to Plaintiff.

14. Defendant Dr. Syed is sued in his individual capacity for damages.

15. Upon information and belief Defendant Michael Dittmann ("Dittmann" hereafter) is a resident of Wisconsin, and at all times relevant to this complaint was the Warden of CCI. As such he was responsible for the overall day-to-day care, custody and security of all prisoners and employees at CCI. Upon information and belief he is the warden at another facility at the DOC.

16. Defendant Dittmann is sued in his individual capacity for

damages.

17. Upon information and belief Defendants Kerry Newbury ("Newbury" hereafter); Kristine DeYoung ("DeYoung" hereafter); Jane Does #1 and #2; Margaret Kieca ("Kieca" hereafter); Neaves Walters ("Walters" hereafter); Denise Valerius ("Valerius" hereafter); Trish Anderson ("Anderson" hereafter); M. Navarro ("Navarro" hereafter); RN Hotch ("Hotch" hereafter); Bonnie Alt ("Alt" hereafter); Laurie Nepiwacki ("Nepiwacki" hereafter); H. Frank ("Frank" hereafter) and Theresa Benyo ("Benyo" hereafter) are residents of Wisconsin, and at all times relevant to this complaint were or currently are registered nurses (RNs) at CCI. As such they were and are responsible for the daily triage and basic nursing services, complying with the verbal and written of physicians and HSM relating to care and treatment and providing accurate and honest information to prisoners and other staff.

18. The above named defendants are sued in their individual capacities for damages.

19. Upon information and belief, Defendant Patton ("Patton" hereafter) is a resident of Wisconsin, and at all times relevant to this complaint was and is the Medical Program Assistant Associate (MPAA), and as such is responsible for generally assisting all medical professionals at CCI's HSU, including the ordering of all medical devices and items not stocked on-site, either from the BHS pharmacy or from approved outside vendors.

20. Defendant Patford is sued in her individual capacity for damages.

21. Upon information and belief Defendants Roy Davenport ("Davenport" hereafter) and Brian Kleeber ("Kleeber" hereafter) are residents of Wisconsin, and at all times relevant to this complaint were and are line Correctional Officers II ("CCOII" or "COs" hereafter) and are posted and/or assigned as transport officers. As such they are responsible for the daily safe and secure transport of all prisoners in their care and custody during any and all transports of prisoners to medical and other transport locations in DOC owned vehicles.

22. Defendants Davenport and Kleeber are sued in their individual capacities for damages; and are sued in the official capacities as transport officers for injunctive relief.

23. All named defendants at all times relevant to this complaint were acting under color of law pursuant to their authority as officers, agents, contractors, state actors or employees of the State of Wisconsin, Department of Corrections.

## FACTS IN SUPPORT OF CLAIMS

24. On or about August 27, 2014, while confined at the Waupun Correctional Institution (WCI), Roberson required immediate emergency surgery resulting in the amputation of both of his legs above the knee.

25. Prior to the surgery Roberson weighed approximately 315 pounds and 6'5" tall. Even after the surgery he remained a large man.

26. From August 27, 2014 until October 14, 2015, Roberson was housed at the Dodge Correctional Institution (DCI) - Infirmary and General Population (GP) for post-op care, healing and rehab.

27. Roberson's only means of ambulation was and is by wheelchair.

28. On or about October 14, 2015, Roberson was transferred from DCI to CCI because it was and is the only adult male facility with cells somewhat equipped for the physically disabled prisoners and has an elevator to get up and down from the housing wings.

29. Upon arrival at CCI Roberson was given a wheelchair by Health Services Unit (HSU) staff that was wholly inadequate to his physical and medical needs. The wheelchair was too small, was not rated for his weight and size, had no seatbelt, had no antitip bars, and the breaks were inoperable.

30. Between October 14, 2015 through August 20, 2019, Roberson made no less than forty (40) Health Service Requests (HSR) requesting repairs and/or a new customized wheelchair adequate to accommodate his large size and health and safety needs, and pointing out the current wheelchair was dangerous.

31. For three-and-a-half (3½) years the following state CCI employees failed to an adequate and safe wheelchair despite being well aware of the need for a new custom-made wheelchair and the dangers and risks of physical injury and harm without such a new chair.

32. On August 2, 2016, Roberson submitted an HSR to HSU asking to have his wheelchair replaced. On August 2, 2016, Defendant Newbury replied that a wheelchair, if personal, would be at his own expense, and if his current chair was a DOC Chair he would need to talk to his unit manager.

33. On August 8, 2016, Roberson submitted an HSR to HSU requesting repairs to his wheelchair, that the weld on the left side of the seat had broken. On August 11, 2016, Defendant DeYoung wrote that she would try and expedite the repair, if possible. That did not happen.

34. On October 2, 2016, Roberson submitted an HSR to HSU inquiring about the status of his wheelchair. Unaccountably, on October 4, 2016, Defendant Jane Doe "1 replied by asking, "What is wrong with your wheelchair?" even though Roberson had months ago stated the issues regarding the chair.

35. On October 9, 2016, Roberson submitted an HSR to HSU inquiring about the status of his wheelchair being repaired, that it had been a long time, and that he kept falling out of the current wheelchair. On October 11, 2016, Defendant Jane Doe "1 (name is not legible) simply refers the HSR to the Health Services Manager (HSM).

36. On October 11, 2016, Defendant HSM Gohde replied to the October 9, 2016, HSR two (2) months after the original August 2, 2016, HSR, writing that repairs for the wheelchair had just been approved. Repairs do not have to be "approved."

37. On October 23, 2016, Roberson submitted an HSR to HSU inquiring on the status of a wheelchair as the one he was using was not safe. There was no written reply other than on October 25, 2016, Defendant Kieca referred the request.

38. On November 14, 2016, Roberson submitted an HSR to HSU reporting that the left back wheel of his wheelchair needed repair because the wheel wasn't balanced. On November 15, 2016, Defendant Jane Doe #1 replied that the wheelchair was scheduled to be repaired on Wednesday.

39. On November 18, 2016, Roberson submitted an HSR to HSU reporting that after the recent repair and return the very same wheel had again broke, that it needed to be repaired or the chair replaced. On November 21, 2016, Defendant Gohde replied that repair was scheduled for the first week in December and that she would update Roberson after the wheelchair had been looked at.

40. The wheelchair continued breaking down because it was not rated or appropriate for Roberson's size or physical and medical needs; and Defendant Gohde kept delaying, and by that delay, denying the customized wheelchair he so desperately needed.

10

41. On December 4, 2016, Roberson submitted an HSR to HSU requesting an update on the status of the wheelchair or if he would be getting a new wheelchair because he couldn't stay in the current one because there was nothing to stop him from flipping over.

42. On December 14, 2016, Defendant Gohde replied that they were waiting on a new part and then the chair would be fixed again. She further stated that when the repair guy comes she would talk to him about what may be causing the chair to break and see what could be done.

43. On December 12, 2016, Roberson submitted an HSR to HSU inquiring about the wheelchair, concerned about his safety with his current wheelchair. On December 14, 2016, Defendant Walters replied, "You just had a meeting with Trish [Andersen] this morning 12-14-16 regarding your concerns."

44. On February 6, 2017, Roberson submitted an HSR to HSU inquiring as to whether he had an appointment with the physical therapist about his wheelchair. On February 7, 2017, Defendant RN Jane Doe #2 replied, "Scheduled with CCI provider."

45. On February 16, 2017, Roberson submitted an HSR to HSU inquiring if he, "Could [I] please! get my wheelchair? Does it still need to be checked before I get it?" On February 16, 2017, Defendant Gohde returned the HSR with only the box checked for "Treated today," which was not responsive to the inquiry about obtaining the new wheelchair.

11

46.  On February 25, 2017, Roberson submitted an HSR to HSU reporting that his wheelchair had broken once again, this time on the other side and that something had to be done. On March 2, 2017, Defendant Valerius returned the HSR with only the box checked for referral to the HSM [i.e., Defendant Oehdke].

47.  On February 26, 2017, Roberson wrote a letter to Defendant Oehdke recounting the constant issues with his wheelchair breaking down again and again, pointing out that he now weighed more than 256 pounds. Roberson also reported that his current wheelchair was unsafe because it didn't have anti-tip bars in the back to prevent him from flipping over backward (as had occurred on several instances). Roberson did not have any legs in which to provide a counter balance in the chair and was forced by HSU to endure the situation and pled for the situation to be resolved immediately so that he would not be severely injured.

48.  There was no reply, but for some unknown reason some HSU staff member (unknown) had referred the matter to the psychiatrist.

49.  On March 5, 2017, Roberson submitted an HSR to HSU pointing out that health and safety issues were posed by the current wheelchair, and questioning why he had been referred to the psychiatrist.

50.  On March 7, 2017, Defendant Kiecca replied, writing that she couldn't find any correspondence about a wheelchair or him being referred to the psychiatrist! She further wrote that "if Roberson would like to discuss this please send another blue slip and we will

schedule appt," even though she had an itse m front of her and could have done it then.

51. On April 17, 2017, Roberson inquired if anti-tip bars had been placed on his wheelchair. On April 20, 2017, Defendant Gohde replied, "No, we have not received the bars. I left a message for the provider to call back with his treatment plan. I expect to hear back 4-21-17. I will update when I get more info."

52. On July 9, 2017, Roberson submitted an HSR to HSU inquiring as to whether there was any word on his wheelchair and about the anti-tip bars being put on. On July 18, 2017, Defendant Anderson wrote that she would "follow w/interim HSUM."

53. On July 27, 2017, Roberson submitted an HSR to HSU inquiring as to whether there was any word yet on his replacement wheelchair. On July 28, 2017, Defendant Navarro wrote that they were "waiting on wheelchair."

54. Defendant Gohde and the rest of the HSU/RN Defendants had been representing that they already had the wheelchair.

55. On August 14, 2017, Roberson submitted an HSR to HSU wanting to know what was going on with his wheelchair. On August 15, 2017, Defendant Anderson wrote that "wheelchair information recently found in old HSUM's office. Reorder status unknown. Involving interim HSUM, BHS Coordinator and Business Office to expedite. So sorry."

56. On September 14, 2017, Roberson submitted an HSR to HSU inquiring, again, as to what was going on with his (re-placement) wheelchair. On September 17, 2017, Defendant Valerius wrote that there was "No follow-up with physio scheduled as of yet."

57. On September 25, 2017, Roberson submitted an HSR to HSU asking if he was going to receive a new wheelchair, that he had been "waiting far too long." On September 26, 2017, Defendant Anderson wrote that "your wheelchair was located and Dr. Syed is discussing [ options ]" (not legible).

58. On October 9, 2017, Roberson submitted an HSR to HSU inquiring as to whether there was any word about when he would see the physical therapist about being fitted for a new wheelchair. On October [? not legible], 2017, Defendant Hotch wrote that "No, there is no appointment scheduled."

59. On October 29, 2017, Roberson submitted an HSR to HSU inquiring as to when he will "see the PT [Physical Therapist] to get properly fitted and weighed for a new wheelchair?" On October 30, 2017, Defendant Anderson wrote that she "Forwarded [the HSR] to Phys. Therapy to review and schedule as appropriate."

60. On November 5, 2017, Roberson submitted an HSR to HSU inquiring as to whether there was any word on his wheelchair or the Physical Therapist. On November 7, 2017, Defendant Anderson replies that the "Wheelchair [is] in HSU waiting repairs."

14

61. The wheelchair was supposed to be a brand new and customized wheelchair so there was no "need for "repairs to be made."

62. On November 20, 2017, Roberson submitted an HSR to Hsu inquiring as to whether he would be seeing the physical therapist to get the new wheelchair since he has been waiting for over a year. On November 20, 2017, Defendant Anderson simply returned the HSR to Roberson with a notation that the HSR (original) had been referred to the physical therapist.

63. Once again the customized wheelchair had not been provided, leaving Roberson in a dangerous and very unsafe wheelchair.

64. On November 20, 2017, Roberson wrote a letter to the Bureau of Health Services (BHS) Director, Defendant James Greer, explaining that he was supposed to have received a new wheelchair over a year ago, but that he was still being forced to use an unsafe and hazardous wheelchair that was without antitip bars and seat belt which could cause him serious injury.

65. On August 14, 2018, Defendant Lon Becher, writing on behalf of Defendant Greer (9 months later!), wrote that it was his "understanding" that the institution was still working on obtaining a new wheelchair and that he had provided information to the nursing supervisor to assist in ordering a new wheelchair appropriate to Roberson's needs.

66.   The CCI nursing defendants, including Defendant Gohde, had been representing to Roberson that they already had the wheelchair a year prior.

67.   On or about December 8, 2017, Roberson submitted an HSR to HSU inquiring about seeing the physical therapist and getting the new wheelchair because the current one was unsafe. On December 9, 2017, Defendant Anderson wrote by asking if this was "addressed at 12-5-17 appt. with M.D." However, it had not been addressed at the insistance of the M.D.

68.   On January 1, 2018, Roberson submitted an HSR to HSU stating that he had "been waiting on a new wheelchair since 2016. I would like to know what the heck is going on?." On March 7, 2018, Defendant Alt put a sticker on the HSR which stated, "Considering the date of the request, it is presumed that this issue has been resolved. If it is not resolved, please submit another request. We apologize for the delay."

69.   The new wheelchair still was not provided.

70.   On March 3, 2018, Roberson submitted an HSR to HSU asking about seeing the physical therapist in order to get a wheelchair and that he had been waiting for two years now. On March 5, 2018, Defendant Patford responded by writing that "You are not scheduled to see PT."

71.   A wheelchair adequate to meet Roberson's medical and physical needs still was not provided, continuing to place

16

Roberson at a serious risk of harm and injury.

72. On May 28, 2018, Roberson submitted an HSR to HSU inquiring if he would see the physical therapist anytime soon and when would he be getting a new wheelchair. Roberson also asked how many times did he have to write about his well-being, and whether or not his well-being was important.

73. On May 31, 2018, Defendant Nepiwacki replied that "The order was just received a few days ago. Please allow time." However, Roberson had already waited and "allowed" two years.

74. On May 29, 2018, Roberson informed Warden Defendant Dittmann that two years ago his wheelchair had broken, that he had informed Defendant DeYang (and others) to obtain a new one, but that he still hadn't received one. Roberson also reminded Defendant Dittmann that they had spoken on February 8, 2018, about this and had expressed his health and safety concerns. Roberson also informed defendant Dittmann that he had written HSU numerous times without any action actually having been taken. Defendant Dittman took no action either.

75. On November 5, 2018, Roberson submitted an HSR to HSU asking if there was any word on his new wheelchair. On November 10, 2018, Defendant Valerius referred the HSR to defendant Pafford "for ordering of medical equipment," but Roberson never actually received a response to his inquiry, nor did he receive a wheelchair.

76. On March 3, 2019, Roberson submitted an HSR to HSU inquiring if he had an appointment to see the physical therapist about getting a new wheelchair and that he was in serious pain in his upper body from the strain of using the current chair. Also, that he was concerned about the risk to his safety. On March 4, 2019, Defendant Frank replied, "Referral to see provider."

77. On March 10, 2019, Roberson submitted an HSR to HSU inquiring as to whether he had an appointment with the physical therapist any time soon about getting a new wheelchair. Roberson had long ago been told by defendant Oehde that the physical therapist was the one who had to provide the wheelchair. On March 12, 2019, Defendant Valerius wrote that "you have a referral to see the MD for this so he can refer you to PT if necessary."

78. This had becoming a revolving door of HSRs and HSU defendant responses promising appointments that never occurred and a new wheelchair or order for one that never materialized for which it had already been written and received, but resulting in Roberson not getting the new customized wheelchair he so badly needed.

79. On March 31, 2019, Roberson submitted a letter to Defendant Cindy Buchanan informing her that he had medical needs that were not being met, including the lack of an adequate wheelchair which he hadn't to date received after nearly three (3) years. Defendant Buchanan nor anyone else replied to the letter or Roberson's concerns.

80. On June 20, 2019, Roberson submitted an HSR to HSU

inquiring about what was going on with the physical therapist and getting a new wheelchair because the current one was getting more dangerous. On June 21, 2019, Defendant Valerius referred the HSR to Defendant Buchanan and the physical therapist. Roberson didn't receive a response from either one.

81.    On June 30, 2019, Roberson submitted an HSR to HSU inquiring if there was any information about seeing the physical therapist and getting a new wheelchair because the current one's bearings in the front wheels were shot. On July 2, 2019, Defendant Valerius wrote that he was "scheduled to be seen by nursing today. No PT orders found from previous visit. So sorry for the delay."

82.    On July 9, 2019, Roberson submitted an HSR to HSU reporting that he had been flipped (i.e., ejected) out of his wheelchair on a medical trip to Madison due to a sudden stop by the guards driving the handicap van and that his elbow had swollen up; and even though he had been checked by Defendant RN Bunyo, when he laid down to sleep that night he had experienced pain in his chest and asked to be seen and checked again.

83.    On July 10, 2019, Defendant Frank replied that Roberson had been "scheduled [for] nurse sick call."

84.    On August 2, 2019, Roberson submitted an HSR to HSU asking to be seen regarding pain in his neck and shoulders and numbness in his right side, shoulder and arm. On August 4, 2019, Defendant Alt replied that he was "scheduled to be seen."

85. On August 4, 2019, Roberson submitted an HSR to HSU inquiring about getting a new wheelchair. On August 6, 2019, Defendant Frank replied that "wheelchair ordering business is being addressed," but does not provide how and when.

86. On August 5, 2019, Roberson submitted an HSR to HSU reporting that he had spoken to several nurses about his neck and shoulder and hand pain, and the numbness on his right side and was still waiting to be seen and to possibly getting an X-ray. On August 6, 2019, Defendant Frank replied that he had been seen and treated for this concern by MD 8-6-19.

87. On August 5, 2019, Roberson submitted an HSR to HSU asking why the physical therapist was denying him physical therapy and refusing to address his wheelchair issue. Roberson also asked if his well-being and safety were of importance. On August 6, 2019, Defendant Frank again replied that "wheelchair ordering business being business [sic-"addressed"]. There was no response from the physical therapist or from Frank about the physical therapy and denial thereof.

88. On July 11, 2019, Roberson's formal ICRS (Inmate Complaint Review System) complaint, CCI-2019-12249 had been received and acknowledged by the Institution Complaint Examiner (ICE).

89. In CCI-2019-12249 Roberson complained that on July 9, 2019, while on the way to a medical appointment at the UW-Hospital, Madison, in the handicapped van, the van came to an

abrupt stop and Roberson had been violently ejected out of his wheelchair and sustaining injuries to his neck, shoulders and arm.

90. Defendants Davenport and Kleeber had indifferently and negligently and in violation of their duty of care to Roberson failed to assure that Roberson had been properly restrained with a safety belt and contrary to the DOC's Division of Adult Institution's (DAI) Policy regarding the mandatory and proper use of safety/seat belts; and also in violation of violation of Wisconsin's mandatory safety/seat belt law At sec. 347.48 (2m)(a-d), Stats.

91. All of the named Defendants were both deliberately indifferent to Roberson's serious medical needs and negligent because they were all well aware that Roberson had an unsafe, hazardous, and inadequately equipped wheelchair that did not have operating breaks, anti-tip bars, nor a seat belt. Without the seat belt Roberson was completely helpless from being ejected from his wheelchair and sustaining serious injuries, especially with both legs amputated and his arms and hands mechanically restrained in cuffs, block box and belly chains.

92. With respect to Complaint CCI-2019-12249, ICE Michael Glass met with Defendant Buchanan who confirmed that even though Roberson had been seen on July 11, 2019, ejection, he was still waiting to be seen by HSU staff.

93. ICE Glass also confirmed that Roberson had in fact been ejected from his wheelchair and that (after three years)

21

Defendant Buchanan and her HSU staff were in the process of ordering a new wheelchair.

94. On August 26, 2019, ICE Glass recommended that Complaint CCI-2019-12249 be affirmed in Roberson's favor; and on September 10, 2019, Reviewing Authority Lori Doehling did affirm the complaint in Roberson's favor in its entirety and without any qualifications.

95. On July 18, 2019, Roberson's formal ICRS Complaint CCI-2019-12676 was received and acknowledged. In the complaint Roberson complained, as he had for the last three years, that his wheelchair was unsafe and dangerous, had a broken backrest, inoperable brakes, was unbalanced, the front wheel bearing went shot, and it didn't have a safety/seat belt.

96. ICE Glass met with Defendant Buchanan and reviewed Roberson's medical Chart and Incident Report #381456 and Confirmed that Roberson had been ejected from his wheelchair on July 9, 2019, while being transported to the UW-Hospital, Madison in a DOC medical transport van when it came to a sudden halt.

97. ICE Glass also found that Defendant Buchanan had Confirmed that Roberson's wheel was "not very good" and that they were in "the process" of ordering a new wheelchair.

98. On August 26, 2019, ICE Glass recommended that complaint CCI-2019-12676 to be affirmed in Roberson's favor; and on

September 10, 2019, RA Doehling did affirm the complaint in Roberson's favor in its entirety and with any modifications.

99. Late in 2019 Roberson finally did receive a new chair but it was still inadequate and unsafe because before giving it to Roberson, maintenance staff made aftermarket and unapproved modifications to the chairs fundamental structure.

100. Between August of 2016 and October 21, 2019, for over 3 years, the State employees named herein, in particular Defendants Valadrss, Anderson, Hotch, Syred, Gohde, Buchanan, Frank, Becher, Kieca, John Does "1 and 2, Pafford, DeYoung, Greer, Benji, Navarro and Nepenacki, knowingly and intentionally subjected Roberson to a clear and present dangerous wheelchair for years that they all knew to be unsafe and inadequate to meet Roberson's known medical and physical needs due to their deliberate indifference and negligence.

## COUNT I

## VIOLATION OF 42 U.S.C. §1983 - CRUEL AND UNUSUAL PUNISHMENT

101. Roberson repeats and realleges each and every allegation contained in paras. 1-100, inclusive, as though fully set forth herein.

23

A.    Health Care Defendants

102.   The Defendants named in paragraph 100 and Defendant Dittmann and John Doe Nursing Agencies ("Health Care Defendants" collectively) knowingly and intentionally and with deliberate indif- ference and great disregard to Roberson's health and safety in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

103.   They were completely aware that as a large man and double amputee, that upon his arrival at CCI, Roberson needed a safe and adequately equipped wheelchair in order to safely convey himself around the facility.

104.   The Health Care Defendants misinformed, lied, delayed and misrepresented the status and availability of the new wheel- chair needed by Roberson for over three (3) years.

105.   Health Care Defendants failed to correct the lack of a safe and adequately equipped wheelchair once they were aware of it for over three years, needlessly subjecting Roberson to pain, suffering, and physical injury.

106.   The Health Care Defendants disregarded the risk of harm to Roberson and were deliberately indifferent to Roberson's risk of harm and pain and suffering by failing to provide a safe and adequately equipped wheelchair, often causing Roberson to fall out of the chair or flip over and injuring himself.

24

107. The Health Care Defendants' awareness of the need for a new, customized, adequately equipped and safe wheelchair and risk of injury without it, in addition to Roberson's fear for his health and safety, was clearly documented and demonstrated by nearly 40 Health Service Requests and letters to the Health Care Defendants.

108. Defendant Buchanan, in ICes complaint CCI-2019·12676 admitted and confirmed that Roberson's complaints about his wheel-chair's condition, stating that "his wheelchair was not very good. The complaint was affirmed in Roberson's favor by the Reviewing Authority, Lori Doehling, on September 10, 2019.

B. Correctional Officer ("CO") Defendants

109. Co Defendants Davenport and Kleeber, from previous con-tacts and trips with Roberson, were well aware on July 9, 2019, Roberson's wheelchair was broken, unsafe and dangerous and without a seat belt, and yet these defendants failed to place him in one of stationary and seat belted seats.

110. Defendants Davenport and Kleeber, as experienced transport officers and users of the handicapped transport van, could easily have forseen and should have forseen that failer to seat belt Roberson's person, rather than just hook in the chair would have resulted in an ejection during an accident or sudden emergency stop.

111. Not only was it admitted in both ICes complaints, 2019-CCI·12249 and CCI-2019·12676 that Roberson's chair was in poor condition and had been ejected from his wheelchair on July 9,

2019, and injured so too did Defendant Davenport in Incident Report #00381456 (dated 7-9-19) and later confirmed by his supervisor Cpt. Terrence C. Judd on July 11, 2019.

112. Defendant Davenport's and Kleeber's failure to put Roberson in a stationary and seatbelted seat in the handicap van demonstrated an obvious deliberate disregard and indifference to Roberson's serious health and safety needs resulting in physical harm to Roberson on July 9, 2019, without any legitimate penological interest, contrary to the Eighth Amendment's prohibition against cruel and unusual punishment.

## COUNT II

## State Law Claim of Negligence

113. Roberson repeats and realleges each and every allegation contained in paragraphs 1-112, inclusive, as though fully set forth herein.

## A.  Health Care Defendants

114. For three years the Health Care Defendants, particularly Defendants Gohde, Buchanan, Becher, Greer, and Dittmann had a clear duty of care to provide Roberson, in a reasonably timely and adequate manner, a safe and adequately equipped wheelchair sufficient to meet Roberson's medical, safety and physical needs as a double leg amputee, and the Health Care Defendants grossly breached that duty of care in failing to provide that wheelchair for three years.

26

115.   Health Care Defendants also breeched that duty of care by failing to provide even timely and reasonable repairs to the existing wheelchair when notified which was also the direct and proximate cause of Roberson being injured, including on July 9, 2019.

B.   Correctional Officer Defendants

116.   Defendants Davenport and Kleeber, on July 9, 2019, when placing Roberson in the handicap van, had a clear duty of care to assure that Roberson's actually body was physically seat belted or restrained, not just the wheelchair, and breeched that duty of care by failing to assure his body was seat belted.

117.   Defendants Davenport and Kleeber also had a clear duty, pursuant to sec. 347, 48 (2m) (a-d), Wis. Stats., to mandatorily require and assure that Roberson's body was securely seat belted and breeched that duty of care and law by failing to require and assure Roberson was securely seatbelted, not just his wheelchair.

118.   Defendants Davenport and Kleeber, even though knowing that Roberson's wheelchair was in serious disrepair, was without seatbelts or breaks, breeched their duty of care by failing to take even minimally reasonable measures to place Roberson in a stationary and seatbelted seat in the handicapped van, seats which were available, and in a situation where the harm to Roberson was easily anticipated, foreseeable and avoidable, especially where Roberson, on July 9, 2019, was completely mechanically restrained in a belly chain, handcuffs, black box, and leg/ankle shackles.

119. The actions and failures to act of Defendants Davenport and Kleeber unnecessarily placed Roberson's health, safety and life at great risk and were the direct and proximate cause of Roberson's serious injuries on July 9, 2019.

## Prayer For Relief

WHEREFORE, Plaintiff Kenneth Roberson respectfully prays for entry of a judgment and for relief as follows:

A. For a judgment that Defendants deprived Roberson of his Constitutional right to be free from Cruel and Unusual punishment under the Eighth Amendment of the U.S. Constitution.

B. For a judgment that the Defendants negligently caused injury to Roberson.

C. For a judgment and award that the Health Care Defendants pay to Roberson damages in the amount of $1,000,000.00 jointly and severally to compensate Roberson for the Health Care Defendants' deprivation of Roberson's right to be free from Cruel and Unusual Punishment under the Eighth Amendment to the U.S. Constitution.

D. For a judgment and award that the Health Care Defendants pay to Roberson damages, including special and punitive damages, in the amount of $1,000,000.00 for Roberson's pain, suffering, fear of injury and injuries for the years without a safe

and adequately equipped wheelchair resulting from their negligence and gross disregard for Roberson's health and safety.

E.   For a judgment and award of damages, including punitive damages, in the amount of "1,000,000." for Defendant Davenport's and Kleeber's violation of Roberson's constitutional right to be free from Cruel and Unusual Punishment under the Eighth Amendment to the U.S. Constitution for their actions and failures to act on July 9, 2019.

F.   For a judgment and award in the amount of "250,000." to be paid by Defendants Davenport for their negligent and unlawful failure to assure that Roberson was securely seat-belted in a stationary seat in the handicap van on July 9, 2019, and causing fear and injury to Roberson.

G.   For an award of punitive damages in the amount of "1,000,000." to be paid to Roberson by the Health Care Defendants based on their obdurate and intentional disregard for Roberson's rights to a safe and adequately equipped wheelchair for three years.

H.   For injunctive relief as to Cindy Buchanan, that

1.   She immediately, and at all times in the future, to provide the necessary required custom made and adequately equipped wheelchair; that no after market changes be made to it; and that at any time any malfunction or breakage is report, repairs be made within seven (7) days from the day reported.; and that

Roberson be awarded $500.00 per day for every day after the initial seven (7) days that his wheelchair is not repaired and returned to him.

I. For an award of pre-judgment and post-judgment interest, and all cost, fees and expert witness costs and fees associated with the prosecution of this action.

J. For an award of reasonable attorney fees, if and when applicable, pursuant to 42 U.S.C. § 1988.

K. For an award of such other and further relief to Roberson as this Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.

Dated this 22 day of April, 2020.

Respectfully Submitted By:

Kenneth L. Roberson
Kenneth L. Roberson, Pro Se
Columbia Correctional Institution